## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **CRAIG W. WAKEFIELD**, *as the Personal* | : | **Case No. 2:23-cv-01353** |
| *Representative and Administrator of the* | : | |
| *Estates of William A. Reed, Jr. and* | : | |
| *Karolyn Reed* | : | |
| | : | |
| **Plaintiff,** | : | **Chief Judge Algenon L. Marbley** |
| | : | **Magistrate Judge Elizabeth Deavers** |
| **v.** | : | |
| | : | |
| **WILLIAMSTOWN VOLUNTEER** | : | |
| **FIRE COMPANY**, *et. al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' Motion for Judgment on the Pleadings

(ECF No. 14).  For the reasons set forth below, this Court **DENIES** Defendants' Motion.

### I.    BACKGROUND

This case involves the tragic deaths of Mr. William A. Reed, Jr. and Mrs. Karolyn

Reed. On April 29, 2021, a fire ignited at Mr. and Mrs. Reed's daughter's residential, mobile

home located in Marietta, Ohio. (ECF No. 1 ¶¶ 10-12). Defendant Williamstown Volunteer Fire

Company ("Williamstown") was one of several fire agencies to respond to the fire. (*Id*. ¶ 13).

Williamstown is a non-profit corporation located in Williamstown, West Virginia, right over the

Ohio River from Marietta, Ohio. (ECF No. 11 ¶ 6). Williamstown was designated as the city's

fire department and operates under the supervision of the West Virginia State Fire Marshal's

Office. (*Id*.). Williamstown was dispatched to the fire on April 29, 2021 by the Washington

County, Ohio 911 Services. (*Id*. ¶ 13).

Defendant Keith Willhide was part of the Williamstown crew who responded to the fire on April 29, 2021. (ECF No. 1 ¶¶ 17-18). Defendant Willhide was operating the Williamstown firetruck at the time. (*Id*. ¶ 19). Once Williamstown arrived at the scene, Defendant Willhide was directed by an Ohio fire department and/or Ohio authorities in charge of the scene to park the Williamstown firetruck on County Road 9. (ECF No. 11 ¶ 23).

Mr. and Mrs. Reed arrived at the scene of the fire and were permitted to remain on scene. (ECF No. 1 ¶¶ 24, 25). Mr. and Mrs. Reed stood on County Road 9 behind the Williamstown firetruck for a period of time. (*Id*. ¶ 26). Defendants claim, after sitting stationary in their firetruck on County Road 9 for some time, they were advised by an Ohio agency to dump their water. (ECF No. 15 at PageID 67). While Mr. and Mrs. Reed were still standing on the roadway behind the Williamstown firetruck, Defendant Willhide began backing the firetruck down the roadway as directed. (*Id*.; ECF No. 1 ¶ 31). Plaintiff claims the fire was under control at the time Defendant Willhide began backing up the firetruck. (ECF No. 1 ¶ 41).

Mr. and Mrs. Reed were ultimately struck by the firetruck as Defendant Willhide was backing up. (*Id*. ¶ 36). Mrs. Reed sustained blunt force trauma and crushing injuries which resulted in her death. (*Id*. ¶ 37). Mr. Reed was dragged and trapped underneath the firetruck where he remained for several minutes before succumbing to his injuries. (*Id*. ¶¶ 38-40). A subsequent investigation found that the reverse alarm in the firetruck was not working properly at the time of the fatal accident. (*Id*. ¶ 45).

The Reeds left behind many children and grandchildren. (*Id*. ¶ 3). On April 17, 2023, the Personal Representative and Administrator for the Estates of Mr. and Mrs. Reed filed a wrongful death action against Defendants Williamstown and Willhide on behalf of Mr. and Mrs. Reed's beneficiaries. (ECF No. 1). In the complaint, Plaintiff claims Defendants are not entitled to

immunity under Ohio law because, at the time of the accident, Defendants were not an Ohio political subdivision, were not acting under contract with Ohio or a mutual aid agreement, were not working to extinguish the fire, and Defendant Willhide's actions were willful, wanton, and/or reckless. (*Id*. ¶¶ 46-54).

On August 14, 2023, Defendants answered the complaint. (ECF No. 11). Defendants denied most of the allegations contained in the complaint. (*See id*.). Defendants attached three exhibits to their answer: a 911 dispatch report from April 29, 2021 (ECF No. 11-1); a Mutual Aide Agreement from January 1, 2016 to December 31, 2020 (ECF No. 11-2); and minute notes from a Washington County Fire Chiefs Meeting held on March 17, 2021 (ECF No. 11-3).

On September 1, 2023, Defendants filed the motion *sub judice* arguing that Defendants are entitled to full immunity from the lawsuit under Ohio law, because they were providing firefighting services to an Ohio governmental entity and operating under an agreement to provide such services at the time of the accident. (ECF Nos. 14, 15). On September 20, 2023, Plaintiff responded in opposition to the motion. (ECF No. 18). On September 29, 2023, Defendants replied to Plaintiff's response in opposition. (ECF No. 20). The motion is now ripe for this Court's consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). *Bates v. Green Farms Condominium Ass'n.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). When evaluating a Rule 12(c) motion, the court must take as true all well-pleaded material allegations of the

pleadings of the opposing party. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id*. at 581-82 (quoting *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(c) motion is granted when "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

On a Rule 12(c) motion, the court may only consider the pleadings themselves. *Max Arnold & Sons, LLC v. W.K. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006). Rule 10(c), however, provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Notwithstanding Rule 10(c), if a party presents matters outside the pleadings on a Rule 12(c) motion, then the motion must be treated as one for summary judgment under Rule 56, unless the court excludes the outside matters. Fed. R. Civ. P. 12(d).

### III.    LAW & ANALYSIS

#### A.  Defendants' Exhibits

As an initial matter, Plaintiff argues that Defendants' Motion for Judgment on the Pleadings relies on matters outside the pleadings[1], and, therefore, must be converted into a motion for summary judgment, unless the Court excludes the outside matters. (ECF No. 18 at PageID 92-94). Defendants' exhibits, however, are part of the pleadings under Rule 10(c),

---

[1] Specifically, Plaintiff argues Defendants rely on ECF Nos. 15-1 (Washington County Fire Protection Association Mutual Aide Agreement January 1, 2016 to December 31, 2020); 15-2 (Washington County Fire Chiefs Meeting Notes from March 17, 2021); and 15-3 (911 call report from April 29, 2021).

because they were attached as exhibits to Defendants' answer to Plaintiff's complaint.[2] Therefore, this Court finds it is not considering any matters outside the pleadings and, thus, does not need to convert the motion sub judice into a motion for summary judgment. For any references to matters not included in the pleadings, this Court affirmatively excludes those references.

## B. Parties' Arguments

Defendants base its motion on the argument that they are entitled to full immunity under Ohio law. Specifically, Defendants claim that at the time of the accident they were: (1) acting as a *de facto* Ohio fire department; and (2) were operating under a mutual aid agreement to provide firefighting services to an Ohio governmental entity.

Plaintiff argues Defendants are not immune from suit, because, at the time of the accident, Defendants were not acting as *de facto* Ohio firefighters nor were Defendants acting under a mutual aid agreement. Further, Plaintiff argues Defendants were not providing firefighting services at the time of the accident, because the fire was under control. Last, Plaintiff argues Defendants' conduct strips them of immunity and/or defenses because it was willful, wanton, and/or reckless.

### 1. De Facto Ohio Fire Department

Defendants first argue they are immune from suit because they were acting as a *de facto* Ohio fire department at the time of the accident. Although Williamstown is a private, non-profit entity, Section 9.60 of the Ohio Revised Ohio, which discusses firefighting and emergency services agreements, provides, in pertinent part:

---

[2] Washington County Fire Protection Association Mutual Aide Agreement January 1, 2016 to December 31, 2020 is labeled as ECF No. 11-2; Washington County Fire Chiefs Meeting Notes from March 17, 2021is labeled as ECF No. 11-3; and 911 call report from April 29, 2021 is labeled as ECF No. 11-1.

(C) Any governmental entity in this state may **contract** with any firefighting agency, **private fire company**, or emergency medical service organization of this state or another jurisdiction to obtain fire protection or emergency medical services, as appropriate, whether on a regular basis or only in times of emergency, **upon the approval of the governing boards or administrative heads of the entities that are parties to the contract**.

. . .

(F) **A private fire company** or private, nonprofit emergency medical service organization providing service pursuant to this section to a governmental entity in this state or another jurisdiction **has the same immunities and defenses in a civil action that a political subdivision has** under section 2744.02 of the Revised Code. **The employees of such a fire company or emergency medical service organization have the same immunities and defenses in a civil action that employees of a political subdivision have** under section 2744.03 of the Revised Code.

O.R.C. § 9.60.

Therefore, under O.R.C. § 9.60, if Ohio contracted with Williamstown and Williamstown was providing service to a governmental entity in Ohio at the time of the accident, then Williamstown and Defendant Willhide are entitled to the same immunities and defenses as an Ohio political subdivision.

Section 2744.02 of the Ohio Revised Code, which discusses when political subdivisions are liable for injury death, or loss, provides, in pertinent part:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, **a political subdivision is liable** in damages in a civil action **for injury, death, or loss to person** or property allegedly **caused by an act or omission of the political subdivision or of any of its employees** in connection with a governmental or proprietary function, as follows:

(1) Except as otherwise provided in this division, **political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority**. The following are **full defenses to that liability**:

. . .

(b) A member of a municipal corporation fire department or **any other firefighting agency was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or**

6

**answering any other emergency alarm and the operation of the vehicle did not constitute willful or wanton misconduct**;

O.R.C. § 2744.02. "Willful misconduct" is defined as "an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio St. 3d 380, 388 (2012) (citation omitted). "Wanton misconduct" is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id*. (citation omitted).

Therefore, under O.R.C. § 2744.02, even if Defendant Willhide's operation of the firetruck was negligent, Defendants are not liable for Mr. and Mrs. Reed's deaths if they were engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm, and Defendant Willhide was not acting willfully or wantonly.

Section 2744.03 of the Ohio Revised Code, which discusses defenses and immunities of political subdivisions, provides, in pertinent part:

(A) In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, **the following defenses or immunities may be asserted to establish nonliability**:

. . .

(2) The political subdivision is immune from liability if the conduct of the employee involved, **other than negligent conduct**, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.

. . .

7

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, **the employee is immune from liability unless one of the following applies**:

. . .

(b) The **employee's acts or omissions were** with malicious purpose, in bad faith, or **in a wanton or reckless manner**;

O.R.C. § 2744.03. "Reckless conduct" is defined as "the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson*, 134 Ohio St. 3d at 388 (citation omitted).

Therefore, under O.R.C. § 2744.03, Defendants are immune from liability if their actions were not in a wanton or reckless manner.

When determining whether a political subdivision is immune from liability, the court must engage in a three-tiered analysis:

"The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. * * * However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 697 N.E.2d 610 (1988) [ (1998) ].

"The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability. *Id.* at 28, 697 N.E.2d 610. At this tier, the court may also need to determine whether specific defenses to liability for negligent operation of a motor vehicle listed in R.C. 2744.02(B)(1)(a) through (c) apply.

"If any of the exceptions to immunity in R.C. 2744.02(B) do apply and no defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability."

*Riehm v. Green Springs Rural Volunteer Fire Department*, 122 N.E.3d 226, 233 (Ohio Ct. App. 2018) (internal quotations and citation omitted).

In this case, Defendants argue they were acting under contract with Ohio to trigger Ohio's immunities and defenses, while Plaintiff alleges they were not. As discussed in detail below, this Court finds there is a genuine issue of material fact whether Williamstown was under contract with Ohio at the time of the fire and accident, because the mutual aid agreement was expired at the time and the Court does not have any reliable evidence before it that a valid agreement was in place.

Additionally, Plaintiff alleges Defendants were not engaged in duty at a fire or answering any other emergency alarm at the time of the accident because the fire was under control. (ECF No. 1 ¶ 41). Defendants claim they were engaged in duty at a fire since they responded to a 911 dispatch for a structural fire (ECF No. 20 at PageID 109, 110). Defendants assert the standard is not whether they were actively working to extinguish the fire, and at the time of the accident, they were backing up the firetruck as directed by Ohio authorities to dump their water (ECF No. 15 at PageID 67). Based on Plaintiff's and Defendants' different versions of what was happening at the time Defendant Willhide began backing up the firetruck, this Court finds there is a genuine issue of material fact whether Defendant Willhide was operating a motor vehicle while engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm, as required by O.R.C. § 2744.02(B)(1)(b).

Finally, even if Defendants were engaged in duty at a fire, proceeding toward a place where a fire is in progress or is believed to be in progress, or answering any other emergency alarm, Plaintiff argues Defendants are stripped of immunity because Defendant Willhide's actions were willful, wanton, and/or reckless. On the one hand, Plaintiff argues Defendant Willhide began backing up the firetruck with blatant disregard to the safety of anyone. (ECF No. 1 ¶ 31). Specifically, Plaintiff alleges Defendant Willhide failed to check the firetruck's blind

spots, failed to ensure the space and area behind the firetruck was clear, failed to utilize a spotter while backing up, and failed to ensure the firetruck's reverse alarm system was working properly. (*Id.* ¶¶ 31-35). Additionally, Plaintiff alleges Williamstown failed to establish policies and procedures regarding the operation of its firetruck and failed to train its employees, including Defendant Willhide, properly to operate its firetruck. (*Id.* ¶¶ 52, 53).

On the other hand, Defendants argue Mr. and Mrs. Reed inadvertently put themselves into a blind spot and Defendant Willhide could not see that they were there and, thus, his actions were, at most, mere negligence. (ECF No. 20 at PageID 113, 114). Based on these disputes, this Court finds there is a genuine issue of material fact whether Defendant Willhide's actions were willful, wanton, and/or reckless, thereby depriving Defendants of immunity under Ohio law. Accordingly, Defendants are not entitled to judgment as a matter of law with respect to their argument that they were operating as a *de facto* Ohio fire department.

### 2. *Mutual Aid Agreement*

Defendants next argue they are entitled to full immunity under Ohio law because they were operating pursuant to a mutual aid agreement. Section 5502.29 of the Ohio Revised Code, which discusses emergency management aid between political subdivisions, provides, in pertinent part:

> (C) Political subdivisions, in collaboration with political subdivisions in adjacent states, **may develop agreements for mutual assistance or aid** for purposes of preparing for, responding to, and recovering from an incident, disaster, exercise, training activity, planned event, or emergency, any of which requires additional resources. Each political subdivision may render assistance in accordance with the mutual assistance or aid agreements. **A mutual assistance or aid agreement with political subdivisions in adjacent states shall be approved by the chief elected officials of the agreeing political subdivisions or their designees and shall be prepared in accordance with the laws, regulations, ordinances, and resolutions applicable to the agreeing political subdivisions.**
>
> . . .

(J) **Responding political subdivisions and the personnel of that political subdivision**, while rendering assistance or aid under this section, or while in route to or from rendering assistance or aid under this section, in a political subdivision in an adjacent state under an agreement authorized by this section, shall be deemed to be exercising governmental functions as defined in section 2744.01 of the Revised Code, **shall have the defenses to and immunities from civil liability** provided in sections 2744.02 and 2744.03 of the Revised Code, and shall be entitled to all applicable limitations on recoverable damages under section 2744.05 of the Revised Code.

O.R.C. § 5502.29. Therefore, under O.R.C. § 5502.29, if Defendants were operating under a mutual aid agreement, they are entitled to the same immunities and defenses as an Ohio political subdivision, discussed above.

Defendants argue they were acting under a mutual aid agreement at the time of the fire and accident, while Plaintiff argues Defendants were not. Defendants provided this Court with a Washington County Mutual Fire Protection Association Mutual Aide Agreement. (*See* ECF No. 15-1). That agreement, however, expired on December 31, 2020. The fatal accident in this case occurred on April 29, 2021, months after the agreement expired.

Defendants also provided this Court with notes from a March 17, 2021 meeting of the Washington County Fire Chiefs. (*See* ECF No. 15-2). The notes state that the expired mutual aid contract was discussed at the meeting. (*Id*.). Specifically, the notes state attendees of the meeting discussed that the agreement was expired, had not been renewed, and there were questions about if it was valid, if changes needed to be made, and if it was binding. (*Id*.). Nonetheless, the notes state that a motion to extend the current contract for six months or until they could receive legal advice on how to proceed with it was made and "passed unanimously." (*Id*.).

This Court finds several issues with the meeting notes. First, the notes do not state whether Williamstown was present at the meeting. Second, the notes do not clarify what mutual aid agreement they were discussing and if Williamstown was included in that agreement. Third,

the notes were not signed by anyone, and the Court has no evidence of their authenticity, reliability, and accuracy. Fourth, it is unclear whether the motion to extend the agreement was made pursuant to applicable bylaws and whether the motion was voted on by the proper people. Last, this Court is unsure whether they could even extend the agreement since it had expired.

Defendants attempt to piece together the expired agreement and meeting notes with the 911 dispatch report. Defendants argue the 911 dispatch report demonstrates that there was a mutual aid agreement in place since it states: "Williamstown Fire Dept contacted for automatic mutual aid." (*See* ECF No. 15-3 at PageID 85). Defendants, however, do not cite to any caselaw, rules, or regulations to support their argument. This Court is not persuaded that the mere phrase "automatic mutual aid" in a 911 dispatch report means that a valid mutual aid agreement existed at the time of the deadly incident.

For all these reasons, this Court finds a genuine issue of material fact exists as to whether Defendants were acting under a mutual aid agreement and, thus, are entitled to immunity under Ohio law. Accordingly, Defendants are not entitled to judgment as a matter of law.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion for Judgment on the Pleadings (ECF No. 14) is **DENIED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: November 14, 2023**